IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ALLEN DALE WILLIAMS, JR.

    Petitioner,

v.

                              CIVIL ACTION NO. 2:16cv139

HAROLD W. CLARKE, Director,
Virginia Department of Corrections,

    Respondent.

## REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Allen Dale Williams, Jr.'s ("Williams") Petition for a Writ of Habeas Corpus ("Petition") filed pursuant to 28 U.S.C. § 2254, ECF No. 1, and the Respondent's Motion to Dismiss, ECF No. 8. The matter was referred for a recommended disposition to the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 8, be **GRANTED**, and Williams' Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I. FACTUAL AND PROCEDURAL BACKROUND

On November 14, 2009, Williams confronted Thomas Ragans ("Ragans") over suspicions that Ragans was sleeping with Williams' estranged wife, Amy. *Williams v.*

1

*Commonwealth*, Nos. CR10-6122-01 through CR10-6122-03 at 1 (Va. Ct. App. Mar. 22, 2011). That night Williams went to Amy's house where he found Ragans' car parked in the driveway. *Id.* At trial, Amy testified that Williams punched the windshield of Ragans' car and accused her of sleeping with Ragans. ECF No. 10 at 5. Amy testified further that as Williams left her house he told her, "I've got work to do" and that he was "going to kill" Ragans. *Id.*; *see* ECF No. 1 at 6. Williams returned to the house of his cousins, Scott and Tina Williams, where he was staying at the time, and began to drink. ECF No. 10 at 5. Later that night, Ragans' wife, Robin, received a number of phone calls from Williams where he angrily made threats against Ragans and told Robin that Ragans was having sex with Amy. *See Williams*, Nos. CR10-6122-01 through CR10-6122-03 at 1; ECF No. 1 at 6. After Williams went to bed around midnight, his cousins hid the keys to their vehicles before going to sleep because they were concerned about Williams drinking and driving. ECF No. 10 at 5. The next morning, Williams found his cousin Scott's keys and drove to Ragans' house. *Id.*

According to testimony from Robin, Williams entered the Ragans' home early the next morning wearing sweatpants and no shirt. *Williams*, Nos. CR10-6122-01 through CR10-6122-03 at 2. Amy testified at trial that Williams always took his shirt off before he fought someone. *Id.* at 6. Robin testified that Ragans tried to calm Williams and Williams responded, "[y]ou're scared aren't you. I'm in your house now, you son-of-a-bitch." *Id.* Williams then threw a punch at Ragans and the two fought. *Id.* During the fight Ragans attempted to run from Williams, and Williams cornered Ragans in the kitchen and threw him on top of the island countertop. *Id.* Ragans struck Williams in the head with a coffee pot causing the pot to break and Williams to bleed. ECF No. 1 at 6. Robin testified that throughout this altercation, Williams continually told Ragans that he was going to kill him. *Williams*, Nos. CR10-6122-01 through CR10-6122-03 at

2

2. The altercation and Williams' threats were recorded on the tape of a 911 call from Robin that was presented to the judge at trial. ECF No. 10 at 6. When Ragans ultimately admitted to having relations with Amy, Williams asked Ragans to provide him details. *Id.* Robin testified that she and Ragans walked to the front door and both asked Williams to leave, but Williams continued to shout angrily at them. *Id.*

Robin said that the next thing she remembered was her, Ragans, and Williams all falling down the brick steps in the front of the house. *Id.* Robin testified she saw Williams kick Ragans in the head and then flee. *Id.* On cross examination, Williams' attorney asked Robin how they fell down the steps. ECF No. 1. at 22. Robin stated on redirect, "I know we went down the stairs thanks to [Williams], but I don't know exactly, you know, did he charge us or what he had done, but I know that [Williams] was responsible for pushing us or whatever, how we got to the bottom of the steps." *Williams*, Nos. CR10-6122-01 through CR10-6122-03 at 6. Ragans died and Robin suffered three collarbone fractures and a broken knee. ECF No. 1 at 8.

Williams fled to the house of one of Ragans' neighbors, Barbara Higginbotham, where he admitted to her that he had kicked Ragans as Robin yelled at him to stop. ECF No. 10 at 6. Williams asked Higginbotham to drive him away from the Ragans' house. *Id.* Higginbotham testified Williams asked her, "Do you think [Ragans] could be dead?" and told her he, Ragans, and Robin had all fallen down the steps, but he did not say whether he pushed them. *Id.*

A bench trial was held in York County Circuit Court on June 7-8, 2010. ECF No. 1 at 2. At the trial, the Commonwealth's Attorney called Christopher Ayers to testify that Williams told him while they were both in jail that he went to Ragans' house "to kick the guy's ass" and that Williams "kicked him" after "they fell down some steps." *Id.* at 9. The Commonwealth's Attorney also asked Ayers whether anyone promised him anything in exchange for his

3

testimony, which Ayers denied. *Id.* at 10. Ayers also testified that he understood the Commonwealth's Attorney did not have control over his sentence because it occurred in a different county and that he did not hope to gain anything for his testimony. *Id.*

Williams argued at trial that he did not kick Ragans in the head. *See* ECF No. 1 at 15. The prosecution's forensic biologist tested numerous items of clothing and reported that Ragans' DNA was not found on either of Williams' shoes. *Id.* The Commonwealth's Attorney presented a medical examiner who testified to the laceration on the back of Ragans' head, and stated, "my opinion would be that the head was moving and struck a stationary object like in a fall." *Commonwealth v. Williams*, Nos. CR10-6122-01 through CR10-6122-03 at 44 (Va. Cir. Ct. June 7, 2010). The medical examiner also testified that Ragans suffered mouth injuries that were "more consistent with a blow to the mouth, either by a punch or a kick or – or a fall on a protruding object, which would hit the mouth directly rather than the entire face." *Id.* at 48.

At the conclusion of that trial, the court found Williams guilty of second degree murder in violation of Virginia Code § 18.2-32, statutory burglary in violation of Virginia Code § 18.2-91, and unlawful wounding in violation of Virginia Code § 18.2-51. ECF No. 1 at 2. At a sentencing hearing on August 17, 2010, the court sentenced Williams to forty years in prison with twenty years suspended for the second degree murder conviction; ten years in prison with five years suspended for the burglary conviction; and five years in prison for the unlawful wounding conviction to be run concurrently with the burglary sentence.[1] *Id.* Williams is presently confined pursuant to this final judgment. *Id.*

Williams appealed his convictions to the Court of Appeals of Virginia on December 22, 2010. Notice of Appeal, *Williams v. Commonwealth*, No. 1909-10-1 (Va. Ct. App. Dec. 22,

---

[1] The Respondent's brief misstates Williams' sentence and the date of the York County Circuit Court's final order. ECF No. 10 at 1.

4

2010). Williams argued the Circuit Court erred in (1) "finding the evidence sufficient as a matter of law to prove Thomas Ragans' death resulted from the criminal act or agency of [Williams]"; (2) "finding the evidence sufficient as a matter of law to prove Robin Ragans' injuries resulted from the criminal act or agency of [Williams]"; and (3) "finding the evidence sufficient as a matter of law to prove second-degree murder as the evidence failed to prove [Williams] acted with malice." *Id.* at 2.

On March 22, 2011, the Court of Appeals denied Williams' appeal in a *per curiam* order on the merits. *Williams*, Nos. CR10-6122-01 through CR10-6122-03 at 1. Regarding the first issue, the Court held the trial court had sufficient evidence against Williams because Robin's "testimony was corroborated by her subsequent detailed statement attributing the fall to [Williams]." *Id.* at 7. The Court did not consider Williams' second issue because he did not raise it at trial. *Id.* at 8. In looking at the third issue, the Court concluded that the evidence proved Williams acted with malice, and not heat of passion, because he called Robin several times the night before threatening Ragans' life, burglarized Ragans' home wearing no shirt as he typically did when he was fighting, threw a punch at Ragans, chased him, assaulted him, and forced Ragans and Robin down the steps. *Id.* at 9. Subsequently, a three-judge panel of the Court of Appeals also denied Williams' appeal on May 27, 2011, reiterating the reasoning from the March 22, 2011 decision. ECF No. 1 at 2. On January 24, 2012, the Supreme Court of Virginia refused to hear Williams' petition of appeal. *Id.*

Williams filed a state habeas petition in the York County Circuit Court on January 11, 2013. ECF No. 10 at 1. Williams claimed: (A) he did not knowingly, voluntarily, and intelligently waive his right to a jury trial; (B) his trial counsel was ineffective because he failed to "preserve the jury trial waiver by making a timely objection that would have preserved the

5

issue for direct appeal"; (C) his trial counsel was ineffective because of his "failure to advise [Williams] of his right to a jury trial and the nature and scope of that right"; (D) his trial counsel was ineffective because he asked Robin during cross examination about falling down the stairs, which opened the door for her to testify on redirect that Williams was responsible for her and Ragans falling down the stairs[2]; and (E) the Commonwealth's Attorney failed to disclose that "Ayers, had been promised a benefit-a reduction of sentence- in return for his testimony" and knowingly used Ayers' "false testimony that he was testifying without any inducement or promise from the prosecution."[3] *Williams v. Lester*, No. CL13005201-00 at 4-20 (Va. Cir. Ct. Jan. 11, 2013). Williams also requested the court hold an evidentiary hearing. *Id.* at 21.

Williams' state habeas petition and his request for an evidentiary hearing were denied on April 3, 2015. *Williams v. Lester*, No. CL13005201-00 (Va. Cir. Ct. Apr. 13, 2015). The Circuit Court dismissed Claims A, B, and C, because Williams failed to raise these issues on his direct appeal and they were meritless. *Id.* at 4-7. The Court also dismissed Claim D because it found trial counsel was not ineffective since Robin's direct and redirect examinations elicited similar testimony and, even without Robin's testimony, there was a "mountain of circumstantial evidence proving that [Williams] committed a criminal act under settled Virginia law." *Id.* at 8-11.

---

[2] In support of Claim D, Williams cited an affidavit from his trial counsel. ECF No. 1 at 22 n.4. In that affidavit, Williams' attorney stated that, "he did 'open the door' during cross-examination of [Robin]. In hindsight, counsel herein perhaps should not have done so." *Williams v. Lester*, No. CL13005201-00, Clancy Affidavit at 3 (Va. Cir. Ct. Nov. 1, 2013). Williams' trial counsel also stated that "the Court could certainly have inferred, solely from the [911] tape alone, that [Williams] was the aggressor and, immediately following his stated intent to kill caused the three (3) of them to fall down the flight of stairs." *Id.* at 4.

[3] In support of Claim E, Williams cited an affidavit from Patricia Dart, of the York County Commonwealth's Attorney office, that stated she told Ayers she would "contact the prosecutors in Williamsburg, 'to let them know Ayers was helpful' to the Commonwealth in a murder case." ECF No. 1 at 11. However, Ms. Dart said, "the York County Commonwealth's Office would call Williamsburg/James City County Commonwealth's Attorney Office to let them know that Ayers was helpful, but that was all we could do" and "[a]t no time did I promise Ayers a specific sentence or a reduction in sentence in exchange for his testimony. Ayers was made aware that his pending charge was in another jurisdiction and that we had no control over what they did in his case." *Williams v. Lester*, No. CL13005201-00, Dart Affidavit at 1 (Va. Cir. Ct. Mar. 28, 2013).

The Court also denied relief based on Claim E because "[t]he experienced trial judge certainly was aware that Ayers was hopeful that his testimony might inure to his benefit" and "given the overwhelming evidence of [Williams'] guilt," the failure to disclose was not material to the trial's outcome. *Id.* at 12. In addition, the Court found that "[t]he only argument [Williams] makes in support of his claim that Ayers' testimony was 'material' is that it was 'introduced to resolve a factual conflict'" of whether Williams kicked Ragans since Williams did not have Ragans' DNA on his shoes. *Id.* The Court concluded that trial judge had sufficient evidence to conclude Williams kicked Ragans with Williams' statement to Barbara Higginbotham that he kicked Ragans as well as the testimony from the medical examiner that Ragans' injuries were consistent with a kick to the mouth. *Id.* at 12-13. The Court found that Claim E was procedurally defaulted as it could have been raised at trial or on direct appeal. *Id.* at 13-14. Williams appealed his state habeas petition to the Supreme Court of Virginia, but it was denied on December 10, 2015. *Id.*

Williams filed the instant Petition for federal habeas relief on March 22, 2016. ECF No. 1 at 1. In the Petition, Williams claimed several grounds for relief: (1)(A) The Commonwealth's Attorney "failed to disclose that a witness for the prosecution, Christopher Ayers, had been promised a benefit-a potential reduction of sentence-in return for his testimony"; (1)(B) The Commonwealth's Attorney "knowingly used perjured testimony, specifically [Ayers'] false testimony that he was testifying without any inducement or promise for the prosecution.";[4] (2) Williams' trial counsel "unreasonably opened the door [during cross examination] to prejudicial testimony [that] establish[ed] the elements of the crime" when Robin said on redirect that

---

[4] As to Claims 1A and 1B, Williams claimed the Circuit Court improperly deemed his identical state habeas claims as procedurally defaulted for failing to bring them at trial or on appeal. ECF No. 1 at 16-18. Williams argued that the Circuit Court was "objectively unreasonable" for concluding that he "was on 'reasonable notice that additional information might be available'" concerning Ayers. *Id.* at 16.

7

Williams "was responsible for pushing" her and Ragans down the stairs. *Id.* at 9, 21-22. Since Williams' request for an evidentiary hearing for his state habeas petition was denied, he also requested the Court hold an evidentiary hearing for Claims 1A and 1B. *Id.* at 18. On June 9, 2016, Respondent filed a Motion to Dismiss, a Rule 5 Answer, and a Brief in Support of the Motion to Dismiss. ECF Nos. 8-10. Williams filed a Reply on June 30, 2016, ECF No. 11, and the Respondent filed a Response on July 20, 2016. ECF No. 12. Therefore, the instant Petition and Motion to Dismiss are ripe for recommended disposition.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Timeliness

Section 2254 petitions are subject to a one-year statute of limitations and must be dismissed if they are filed later than one year after the conclusion of the conviction's direct review or the time to seek direct review expires. 28 U.S.C. § 2244(d)(1)(A). Generally, the limitation period for filing a § 2254 petition is statutorily tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" is pending. *Id.* § 2244(d)(2). To be properly filed, the petition must comply with the state's procedural rules imposed on post-conviction petitions, *Pace v. DiGuglielmo*, 544 U.S. 408, 413-17 (2005) (denying statutory tolling to an improperly filed petition when the state court rejected the petition as untimely), and violation of those rules, including "time limits, place for filing and filing second or successive petitions," will render that petition improperly filed and ineligible for statutory tolling, *Rodgers v. Angelone*, 113 F. Supp. 2d 922, 929 (E.D. Va. 2000). Moreover, the time in which a habeas petition is pending in federal court does not toll the one-year statute of limitations. *Duncan v. Walker*, 533 U.S. 167, 172 (2001).

The Supreme Court of Virginia refused Williams' petition for appeal on January 24, 2012. Williams' time for filing a writ of habeas corpus in this Court began on April 23, 2012, or ninety days after the Supreme Court of Virginia refused his direct appeal and the time to appeal that order to the United States Supreme Court expired. *See* Sup. Ct. R. 13.1; *Harris v. Hutchinson*, 209 F.3d 325, 328 & n.1 (4th Cir. 2000) ("[T]he time for seeking direct review of [the] state-court conviction was concluded . . . when the period for filing a petition for a writ of certiorari in the United States Supreme Court expired."). Under § 2244(d)(1), Williams had until April 23, 2013, or one year after the expiration of his opportunity to seek direct review, to file his habeas petition in this Court, absent any tolling.

Williams filed his state habeas petition on January 11, 2013, 263 days after the federal habeas statute of limitations began to run. His state habeas petition tolled the federal habeas statute of limitations for 1063 days, calculated from the date Williams' state habeas petition was filed, to December 10, 2015, when the Supreme Court of Virginia dismissed his petition. After the Virginia Supreme Court's dismissal on December 10, 2015, Williams had 102 days remaining to file his federal habeas petition.[5] Thus, Williams' deadline to file his federal habeas petition was extended to March 21, 2016. Williams filed one day after his deadline expired on March 22, 2016. Therefore, Williams' Petition is untimely absent equitable tolling.

A court will equitably toll the limitation period "if [a petitioner] presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003). Most recently, the United States Supreme Court held that "a litigant seeking equitable tolling bears the

---

[5] Williams incorrectly argued he had 103 days from December 10, 2015, to file his Petition. ECF No. 1 at 4. Unfortunately, Williams' failed to properly consider that the statute of limitations period did not begin to run until after the ninety day period to appeal the Supreme Court of Virginia's Order to the United States Supreme Court expired. Thus, he improperly added the ninety day tolling period to the back end of his calculation instead of at the beginning, where it was affected by the extra day in February due to 2012 being a leap year. *See* p. 11, *infra*.

burden of establishing two elements: (1) that he had been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418. To qualify for equitable tolling, a petitioner must overcome a high hurdle because only in "rare instances where–due to circumstances external to the party's own conduct–it would be unconscionable to enforce the limitation period against the party and gross injustice would result" will a court equitably toll the limitation period. *Harris*, 209 F.3d at 330.

With this in mind, the Court turns to the facts of this case. Williams miscalculated his date to file his Petition and Respondent failed to address timeliness in its brief, thus Williams did not address equitable tolling. Given that Williams did not point to any specific, extraordinary circumstances beyond his control that hindered him from timely filing a § 2254 petition, there is no rationale on which the undersigned could apply equitable tolling. It is appropriate for the undersigned to recommend dismissal of a petition as time-barred when the petitioner was given appropriate "notice and opportunity to respond" when the issue was raised in the Respondent's Motion to Dismiss, or when it is clear on the face of the petition that equitable tolling does not apply. *Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002) (holding that "the court must warn the prisoner that the case is subject to dismissal pursuant to § 2244(d) absent a sufficient explanation, unless it is indisputably clear from the materials presented to the district court that the petition is untimely and cannot be salvaged by equitable tolling principles . . . .").

In this case, it is indisputably clear that the Petition was untimely, even though just by one day. Williams was represented by counsel, who filed the Petition, and under these circumstances there is no way the Petition can be salvaged by equitable tolling principles discussed *infra*. Williams' erroneous calculation of the tolling period stemming from his filing of the state habeas petition is revealed in his Petition:

10

> 14. This petition filed pursuant to 28 U.S.C. § 2254 is timely and presents exhausted claims. As indicated above, Petitioner's direct appeal (Va. Sup. Ct. Rec. No. 111181) concluded in the Virginia Supreme Court by order dated 1/24/2012. On or about January 11, 2013, the state habeas petition was filed, leaving 13 days on the one-year anniversary. Plus the Petitioner had a 90-day window from 1/24/2012 to seek review on direct appeal to the United States Supreme Court, and such 90-day period would not count toward the federal one-year statute. See Harris v. Hutchinson, 209 F.3d 325, 328 (4th Cir. 2000).
>
> 15. The state habeas case concluded on December 10, 2015, when the Virginia Supreme Court refused the petition for appeal. With the 13 days plus the additional 90 days, the Petitioner has 103 days from 12/10/15 to file the federal habeas petition, or until March 22, 2016. The Petitioner is filing on or before that date.

ECF No. 1 at 4. Williams' mistakenly calculated the tolling period. Once the Virginia Supreme Court refused the petition for appeal on January 24, 2012, the ninety day period to apply for a writ of certiorari to the United States Supreme Court began to run.[6] Because 2012 was a leap year and therefore February had 29 days, this period expired on April 23, 2012, and the one year statute of limitations began to run the next day. By January 11, 2013, when Williams filed his state habeas petition, 263 days of the limitations period had run and the statute was tolled. After the Virginia Supreme Court refused the petition for this appeal on December 10, 2015, Williams had only 102 days remaining in the limitations period. Thus, his statute of limitations expired on March 21, 2016. His petition was filed on March 22, 2013, one day late. Counsel's erroneous calculation simply does not constitute the type of extraordinary circumstance beyond his control contemplated by *Pace* or *Rouse*.

"Courts have strictly construed AEDPA's one-year limitations period. Even petitions filed only a single day late must be dismissed under the statute." *Jefferson v. Biter*, No. 12-01934, 2012 WL 7811195, at *4 (C.D. Cal. Nov. 16, 2012) (quoting *United States v. Locke*, 471 U.S. 84, 101 (1985) ("[R]egardless of where the cutoff line is set, some individuals will always

---

[6] *See* n. 5, *supra*.

11

fall just on the other side of it. Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced . . . . A filing deadline cannot be complied with, substantially or otherwise, by filing late—even by one day.")) (additional citation omitted).

Based on the information presented at this time, the undersigned **FINDS** that Williams' Petition does not qualify for equitable tolling, and therefore is untimely and recommends that the Petition be **DISMISSED**. However, despite the fact that it is "indisputably clear" that the petition is untimely, since Williams did not address this issue the Court analyzes the merits of his Petition, and concludes that even if the Court were to find that Williams' Petition was timely, it should nonetheless be dismissed.

## B. Exhaustion

Before addressing the merits of a federal habeas petition, the preliminary inquiry must be whether the petitioner appropriately exhausted his claims. Section 2254 allows a prisoner held in state custody to challenge his detention on the ground that his custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner, however, must exhaust his available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief in order to give "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Importantly, "[t]he burden of proving that a claim is exhausted lies with the habeas petitioner." *Id.* at 618. The exhaustion requirement is satisfied if the prisoner seeks review of his claim in the highest state court with jurisdiction to consider it through either direct appeal or post-conviction proceedings, *see*

*O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999), and the "essential legal theories and factual allegations advanced in the federal court [are] the same as those advanced at least once to the highest state court," *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993). Williams raised all present claims in his state habeas petition before the York County Circuit Court and the Supreme Court of Virginia. Williams alleged the same grounds for relief in Claims 1A and 1B as he alleged in Claim E with his state habeas petition and the same grounds in Claim 2 that he alleged with Claim D in his state habeas case. Additionally, this Court notes that the Respondent conceded that all of Williams' claims are exhausted. ECF No. 10 at 2. Accordingly, the undersigned **FINDS** that Williams has properly exhausted his state remedies.

### C. Prosecutorial Misconduct Claims: Claims 1A, 1B, and Procedural Default

The doctrine of procedural default provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619 (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). A state procedural rule provides adequate and independent grounds for dismissal "if it is regularly or consistently applied by the state court" and "does not rely on a rule of federal constitutional law." *Mu'Min v. Pruett*, 125 F.3d 192, 196 (4th Cir. 1994) (citing *Johnson v. Mississippi*, 468 U.S. 578, 587 (1988); *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)).

Williams argued that the Commonwealth's Attorney failed to disclose Ayers "had been promised a benefit-a potential reduction of sentence-in return for his testimony" and knowingly used Ayers' testimony to the opposite. ECF No. 1 at 9. However, the Circuit Court held that

13

Williams' prosecutorial misconduct claims were barred "because the issues asserted could have been litigated at trial and on direct appeal." *Williams*, No. CL13005201-00, at 13-14 (citing *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (1974), *cert. denied*, 419 U.S. 1108 (1975)). The Fourth Circuit has "held on numerous occasions that the procedural default rule set forth in *Slayton* constitutes an adequate and independent state law ground for a decision." *Mu'Min*, 125 F.3d at 196. Therefore, claims 1A and 1B are procedurally defaulted.

However, "[a] petitioner may only overcome procedural default and obtain federal review on the merits if he is able to demonstrate cause and prejudice for the default or demonstrate that failure to review the claims will result in a fundamental miscarriage of justice." *Edwards v. Johnson*, No. 2:10cv339, 2010 WL 5825427, at *3 (E.D. Va. Dec. 15, 2010) (citing *Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)). "In order to show 'cause' for the default, [a petitioner] must establish 'that some objective factor external to the defense impeded [his] efforts to raise the claim in state court at the appropriate time.'" *Breard*, 134 F.3d at 619 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Williams argued that the Circuit Court was "objectively unreasonable" for concluding that he "was on 'reasonable notice that additional information might be available'" concerning Ayers. ECF No. 1 at 16. Yet Williams failed to proffer any evidence of "cause" to overcome the procedural default as to why he did not raise these issues at trial or on direct appeal. "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray*, 477 U.S. at 486. Absent a showing of cause, a prejudice analysis is unnecessary. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995) (noting that courts should not consider the issue of prejudice absent cause to avoid the risk of reaching an alternative holding).

A petitioner may be able to overcome the procedural bar if he is able to demonstrate that failure to review his habeas claims will result in a fundamental miscarriage of justice. "[I]n order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999) (citing *Murray*, 477 U.S. at 496). Williams failed to argue actual innocence, therefore, failing to review his prosecutorial misconduct claims will not result in a fundamental miscarriage of justice. Thus, the Court finds Claims 1A and 1B are procedurally defaulted.

Even if Claims 1A and 1B were not procedurally defaulted, they would fail on the merits because they did not materially affect the outcome of the trial. In establishing prosecutorial misconduct, the petitioner can pursue a claim against the prosecution under *Brady v. Maryland*, 373 U.S. 83 (1963), for failure to disclose exculpatory evidence, or under *Napue v. Illinois*, 360 U.S. 264 (1959), for a violation of due process rights. Under either standard, the petitioner must establish that the prosecutor's failure to disclose exculpatory evidence materially affected the outcome of the case. *Strickler v. Greene*, 527 U.S. 263, 296 (1999); *Smith v. Phillips*, 455 U.S. 209, 219-20 (1982).

In the instant matter, Williams claimed the Commonwealth's Attorney failed to disclose that Ayers was receiving a benefit from his testimony because the York County Commonwealth Attorney's Office promised to "contact the prosecutors in Williamsburg, 'to let them know Ayers was helpful' to the Commonwealth in a murder case." ECF No. 1 at 11. However, in an affidavit from a prosecutor from the York County Commonwealth Attorney's Office, she stated "[a]t no time did I promise Ayers a specific sentence or a reduction in sentence in exchange for his testimony. Ayers was made aware that his pending charge was in another jurisdiction and

15

that we had no control over what they did in his case." *Williams v. Lester*, No. CL13005201-00, Dart Affidavit at 1 (Va. Cir. Ct. Mar. 28, 2013). Even if the undersigned accepted Williams' allegations as true, the failure to disclose was not material because the trial judge at Williams' bench trial was fully aware that Ayers hoped his testimony would aid him.

Nonetheless, Williams argued Ayers' testimony was material because it aided the trial judge in resolving the factual dispute of whether Williams kicked Ragans since there was no DNA evidence on Williams' shoe. This argument is unpersuasive because the trial judge had sufficient evidence to deduce that Williams kicked Ragans because of Williams' statement to Barbara Higginbotham that he kicked Ragans and the testimony of the medical examiner that Ragans' injuries were consistent with a kick to the mouth. Accordingly, the failure to disclose Ayers' potential benefit was not material to the outcome of the case and the undersigned **RECOMMENDS** that Claims 1A and 1B be **DISMISSED**.

### D. Ineffective Assistance of Counsel Claim: Claim 2

When a state court addressed the merits of a claim that is subsequently raised in a 28 U.S.C. § 2254 petition, a federal court may not grant habeas relief on that claim unless, *inter alia*, the state court decision is contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011). The Court independently reviews whether that decision satisfies either standard. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is "contrary to" clearly established federal law if the state court "arrives at a conclusion opposite to that reached by th[e] [U.S. Supreme] Court on a question of law or if the state court decides a case differently than th[e]

[U.S. Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. As to whether a state court decision is an "['objectively'] unreasonable application" of clearly established federal law, the state court must "identif[y] the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of the prisoner's case." *Id.* at 410. Ultimately, though, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is *firmly convinced* that a federal constitutional right has been violated." *Id.* at 389 (emphasis added). It is this Court's obligation to focus "on the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997).

The United States Supreme Court summarized the high bar petitioners face in a federal habeas petition in the context of Sixth Amendment ineffective assistance of counsel claims previously rejected by the state court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' [466 U.S. 668, 689 (1984)]; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles [v. Mirzayance]*, 556 U.S. [---, ---], 129 S. Ct. [1411, 1420 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ---, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Premo v. Moore*, 131 S. Ct. 733, 740 (2011). With that standard in mind, the undersigned now turns to the merits of Williams' ineffective assistance of counsel claims. Generally, to be entitled to habeas relief in state court, Williams has to show both that his defense counsel provided deficient assistance and that he was prejudiced as a result. *Strickland v. Washington*,

17

446 U.S. 668, 700 (1984). First, to establish deficient performance, Williams must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688-89 (holding that there is a strong presumption that trial counsel provided reasonable professional assistance). Second, Williams must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 693-94 (holding that counsel's errors must be "so serious as to deprive the defendant of a fair trial," and that the petitioner must "show that the errors had some conceivable effect on the outcome of the proceeding").

The Supreme Court of Virginia was not unreasonable in affirming the York County Circuit Court's finding that Williams failed to satisfy *Strickland*'s demanding standard. Williams' trial counsel did not fall below an objective standard of reasonableness since Robin's direct and redirect examinations elicited similar testimony. Moreover, Williams was not prejudiced by his trial counsel's actions because even without Robin's testimony, there was a "mountain of circumstantial evidence proving that [Williams] committed a criminal act under settled Virginia law." *Williams v. Lester*, No. CL13005201-00 at 8-11 (Va. Cir. Ct. April 13, 2015). Such evidence included Williams' own statement to Barbara Higginbotham that he kicked Ragans and the testimony of the medical examiner that Ragans' injuries were consistent with a kick to the mouth. Because the Supreme Court of Virginia did not unreasonably affirm the York County Circuit Court's application of *Strickland* to Claim 2, the undersigned **RECOMMENDS** that Claim 2 also be **DISMISSED**.

### E. Williams' Request for an Evidentiary Hearing

In the instant Petition, Williams also requested an evidentiary hearing for Claims 1A and 1B. ECF No. 1 at 18. Among other requirements, an evidentiary hearing is permitted "only

when the petitioner alleges additional facts that, if true, would entitle him to relief." *Beaver v. Thompon*, 93 F.3d 1186, 1190 (4th Cir. 1996). As discussed in Sec. II.C., *supra*, the additional facts Williams alleged in support of Claims 1A and 1B, even if true, do not entitle him to relief. Therefore, Williams' request for an evidentiary hearing is **DENIED**.

### III. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 8, be **GRANTED**, and Williams' Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

### IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Williams is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

/s/
Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
November 30, 2016

20